WHELAN, J.
 

 Certain of the defendants in an action [#117628] pending in the respondent court have petitioned for a writ of prohibition directed to respondent against the further prosecution of said action,- and for a writ of mandate that respondent sustain demurrers filed to the complaint in said action, grant motions to strike portions of the complaint; order that the real party in interest give notice of the pendency of the action to all persons it purports to represent as plaintiff; and order that certain interrogatories be answered. Among the petitioners are the City of Riverside, the City of Redlands, the City of Colton and the City of San Bernardino.
 

 In a separate proceeding the United States of America, another defendant in the same action, has petitioned for a writ of prohibition against the further prosecution of the action so far as the United States is concerned. The two proceedings have been consolidated.
 

 The real party in interest, the plaintiff in action #117628, is Orange County Water District (OCWD), a public corporation created and existing under the Statutes of 1933, chapter 924, page 2400, as amended from time to time (Wat. Code App., Ch. 40).
 

 The complaint in the action in the respondent court is captioned: “Complaint for General Adjudication of Water Rights and Injunctive Relief. ’ ’
 

 The central question posed is whether the action is indeed one for a general adjudication of water rights in the Santa
 
 *747
 
 Ana River system, for it is.only if the action is for a general adjudication of water rights of a river system that the United States has given its consent to be joined as a defendant.
 

 The complaint alleges that the action “is brought, maintained and prosecuted for the benefit of the District and also of all riparian, overlying and other landowners, water users and inhabitants within the plaintiff District. ’ ’
 

 The defendants who have appeared in the action number some 2,550, including 11 cities and 2 counties. Certain of the defendants are alleged to be owners of land overlying portions of either or both the Upper Basin and the Middle Basin of the Santa Ana River; it is alleged that others have taken, pumped, appropriated, and diverted water from either or both said Upper Basin and Middle Basin.
 

 The complaint sought, among other relief, that the right if any of each defendant to the water of the Santa Ana River system be fixed and determined.
 

 In addition to the Upper Basin and the Middle Basin, the Santa Ana River system is made up of the Lower Basin. This division of the system into three major basins was the result of a finding made by the trial court in an earlier action brought by OCWD against the cities of Riverside, Redlands, Colton and San Bernardino, appeals from the judgment in which are reported in volume 173, California Appellate Reports, 2d series, page 137, and in volume 188 at page 566.
 

 The description of the river system and of the three major basins set forth in the reported decision in volume 173 is adopted and set forth in the complaint in action #117628.
 

 The Lower Basin, “so far as it consists of arable land,” is wholly occupied by the Orange County Water District, which lies wholly within, but is not co-extensive with, the County of Orange.
 

 The Earlier Action
 

 In the earlier action, to which reference has been made, OCWD, on behalf only of the owners of agricultural lands within the District overlying the Lower Basin of the river system, sued only the four cities of Riverside, Redlands, Colton and San Bernardino. It sought and obtained a judgment defining the extent of the prescriptive rights of each of the four upstream cities to take water from the river
 
 *748
 
 system in diminution of the rights of the downstream overlying and riparian owners in the Lower Basin. Because of the failure of OCWD in that earlier suit to join as defendants all claimants to prescriptive rights to water from the Upper and Middle Basins, many questions were left unanswered. Among them was the full extent of the water rights of the four cities, since in addition to the prescriptive rights asserted by each of them, some or all of the four cities had acquired additional rights by condemnation or purchase from the former owners of prescriptive rights or of rights based upon ownership of overlying or riparian lands.
 
 [1]
 

 Also unsettled was the extent of the rights of individual claimants within the District, and the aggregate of the rights of any class of claimants within the District other than overlying agricultural owners.
 
 [2]
 

 Since no findings were made in the former actions as to the rights of individual claimants or other classes of claimants, it was held that the judgment inured only in favor of those on whose behalf it was brought, the overlying agricultural owners.
 
 [3]
 

 However, the opinion in the earlier case noted that there had been evidence before the trial court that would have permitted it to: “. . . adjudicate the prescriptive rights of those appropriators of water within the District, whose annual drafts of water, for a long time back have been
 
 *749
 
 shown and are even set out in the trial court’s amended finding XIII.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 188 Cal.App.2d 566, 573 [10 Cal.Rptr. 899].) and that: “ [UJnder the complaint, as drawn, counsel might have gone as far as they chose in introducing the evidence of the prescriptive rights of the cities within the District and of others using water within the District such as the companies taking water below the Prado Dam, and, indeed, of any or all water users within the District having any water rights.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside, supra,
 
 188 Cal.App.2d 566, 585.)
 

 Action No. 117628
 

 In action #117628, OCWD returns to the attack, this time marshals the forces of all owners of water rights and of all inhabitants of the District, designedly directing its fire not only against the four defendant cities in the former action but against all claimants, owners and users within the Upper Basin and the Middle Basin. It does not, however, join as defendants certain appropriators that divert water from points upstream of the District’s boundaries but within the Lower Basin, nor any claimants or users owning lands within the Lower Basin but outside the District, if there be such.
 

 The complaint alleges: “The total use of water within the plaintiff District and the total amount of water needed for beneficial uses exceeds 300,000 acre-feet per year. Of this amount, 130,000 acre-feet was and is reasonably needed by landowners and water users who own and exercise overlying rights in such amount for beneficial uses upon lands overlying the District Basin. The remaining amount was and is reasonably needed for beneficial uses by landowners and water users within the District who own and exercise riparian, appropriative and prescriptive rights in such amount.” and: “The subject matter and questions involved in this action are of common and general interest to the many owners of land within the plaintiff District and bordering upon and riparian to the Santa Ana River and to the many owners of land overlying, and users of water in, the hereinafter-mentioned District Basin, and to the inhabitants of the District. ’ ’
 

 Position of the Petitioners
 

 The petitioners in the consolidated proceedings contend that OCWD does not have the capacity to sue on behalf of
 
 *750
 
 the individual owners of water rights within the District; that the action considered as a class action in fact involves the rights of several classes having conflicting interests; that the court has no jurisdiction over the United States of America because the complaint does not seek an adjudication of the nature and extent of the rights to water of the various owners of or claimants to such rights within the District and the Lower Basin, thereby depriving the action of any claim to be one for a general adjudication as to rights in the river system; that, nevertheless, the United States would be an indispensable party to any such general adjudication.
 

 The District’s Right and Capacity to Sue
 

 Although it is not alleged in the complaint that OCWD is itself the owner of any water rights, it has the legal capacity and the right to sue.
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 173 Cal.App.2d 137 [343 P.2d 450].)
 
 [4]
 

 The Class Action Question
 

 Plaintiff’s capacity to sue is based upon the statute that created OCWD.
 
 [5]
 
 It is, therefore, immaterial that it may not qualify to bring a class action under section 382, Code of Civil Procedure. As in the case of
 
 Coachella Valley County Water Dist.
 
 v.
 
 Stevens,
 
 206 Cal. 400 [274 P. 538], the complaint in action #117628 does not allege that the plaintiff is the owner of any water rights, or of land within
 
 *751
 
 its own boundaries to which there might be appurtenant water rights. Plaintiff, therefore, is not a member of any class that it seeks to represent. Action #117628 is not a class action brought by a member of the class to be represented.
 

 We observe, moreover, that all of the claimants to water rights within OCWD do not have a common interest in the sense of basing their claims upon a common right, or upon rights deriving from a like source.
 

 The riparian and overlying owners have rights that they may assert against upstream riparian and overlying owners whose claims are based upon the geographical locations of their lands with respect to the river system.
 

 Owners of prescriptive rights whose points of diversion are below the Middle Basin have no prescriptive rights that can be asserted against riparian and overlying owners upstream from such points of diversion.
 
 (Pabst
 
 v.
 
 Finmand,
 
 190 Cal. 124, 128-129 [211 P. 11];
 
 San Joaquin etc. Co.
 
 v.
 
 Worswick,
 
 187 Cal. 674, 684-685 [203 P. 999].)
 

 The existence of a class interest among all owners of overlying agricultural lands in OCWD was declared in the former action. At the same time the opinion on appeal in the former action raised the question, without answering it, whether other owners of water rights within the District were properly to be included in the same class.
 
 [6]
 

 While one of the results of a class action under section 382, Code of Civil Procedure, is that the judgment rendered therein becomes
 
 res judicata
 
 as to all members of the class represented
 
 (Chance
 
 v.
 
 Superior Court,
 
 58 Cal.2d 275, 288 [23 Cal.Rptr. 761, 373 P.2d 849]), the same effect follows where the authority to sue is given specifically to a public entity by statute, even though the public entity in a particular instance could not have maintained the action as representative of a class.
 
 (Coachella Valley County Water Dist.
 
 v.
 
 Stevens, supra,
 
 206 Cal. 400.)
 

 We do not doubt that in action #117628 all claimants
 
 *752
 
 to water within OCWD would, as between themselves on one side, and the petitioners herein and the other defendants originally named in said action, be bound by any judgment to be rendered therein.
 

 It yet remains true that said action is not a representative class action brought by a member of the class represented on behalf of himself and all those similarly situated. (See
 
 Weaver
 
 v.
 
 Pasadena Tournament of Roses Assn.,
 
 32 Cal.2d 833 [198 P.2d 514] ;
 
 Horton
 
 v.
 
 Citizens Nat. etc. Bank,
 
 86 Cal.App.2d 680 [195 P.2d 494].)
 

 The Question of a General Adjudication of Water Rights
 

 In discussing whether action #117628 is truly an action for a general adjudication of water rights in the Santa Ana River system, we note first that the answer to that question is controlling only as to the issue whether the court below has jurisdiction in said action over the United States of America.
 

 Apart from that issue, there can be no question of the right of the plaintiff to elect the parties that it will join as defendants, and to choose those owners of lands within the District on whose behalf the District will bring an action to prevent interference with the water rights of such owners.
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside, supra,
 
 173 Cal.App.2d 137, 172-173.)
 
 [7]
 

 The United States of America, however, has not given its consent to be joined as a party to every action involving water rights or that may be commenced to establish or protect proprietary water rights.
 
 (Nevada
 
 v.
 
 United States,
 
 279 F.2d 699;
 
 Miller
 
 v.
 
 Jennings,
 
 243 F.2d 157;
 
 Seacoast Water Com.
 
 v.
 
 City of Portsmouth,
 
 106 N.H. 15 [203 A.2d 649].)
 

 The United States, without its consent, given by the
 
 *753
 
 Congress, is not subject to suit
 
 (Arizona
 
 v.
 
 California,
 
 298 U.S. 558 [80 L.Ed. 1331, 56 S.Ct. 848] ;
 
 People
 
 v.
 
 United States,
 
 307 F.2d 941;
 
 Livermore
 
 v.
 
 Beal,
 
 18 Cal.App.2d 535, 545 [64 P.2d 987]);
 
 and its
 
 officers cannot waive its privilege in this respect
 
 (Carr
 
 v.
 
 United States,
 
 98 U.S. 433 [25 L.Ed. 209]).
 

 Nor can a state pass a valid law for making the United States suable in its courts.
 
 (Carr
 
 v.
 
 United States, supra.)
 

 OCWD as well as petitioners recognize that any right to join the United States as a defendant derives from section 666 of title 43, U.S.C.A., which provides; “(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United. States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances :
 
 Provided,
 
 That no judgment for costs shall be entered against the United States in any such suit.”
 

 Statutes waiving the immunity of the United States from suit must be strictly construed.
 
 (United States
 
 v.
 
 Lindholm, 79
 
 F.2d 784 [103 A.L.R 213].)
 

 The courts of the state are bound by the interpretation put upon federal statutes by the courts of the United States.
 
 (MacKenzie
 
 v.
 
 Hare,
 
 165 Cal. 776, 779 [134 P. 713, Ann. Cas. 1915B 261, L.R.A. 1916D 127].)
 

 The courts of the United States have interpreted section 666 of title 43, U.S.C.A. We must consult the decisions of those courts for the meaning of the statute.
 

 In
 
 State
 
 v.
 
 Rank,
 
 293 F.2d 340, the United States was made a party defendant in an action brought to prevent interference with their water rights by the owners of lands riparian to a 60-mile stretch of the central San Joaquin River between Friant Dam and Mendota, and the owners of
 
 *754
 
 lands overlying subterranean reservoirs in the same area fed by the river.
 

 In passing upon the jurisdictional issue, the Circuit Court of Appeals determined the meaning of section 666: “There can be little doubt as to the type of suit Congress had in mind. It was not a private dispute between certain water users as to their conflicting rights to the use of waters of a stream system; rather, it was the quasi-public proceeding which in the law of western waters is known as a ‘general adjudication ’ of a stream system: one in which the rights of all claimants on a stream system, as between themselves, are ascertained and officially stated.
 

 “With reference to this type of suit, the Senate Report upon the bill which became § 666 quoted as follows from
 
 Pacific Live Stock Co.
 
 v.
 
 Lewis
 
 (1916) 241 U.S. 440, 447 [60 L.Ed. 1084, 1096, 36 S.Ct. 637] :
 

 “ ‘All claimants are required to appear and prove their claims; no one can refuse without forfeiting his claim, and all have the same relation to the proceeding. It is intended to be universal and to result in a complete ascertainment of all existing rights, to the end, first, that the waters may be distributed, under public supervision, among the lawful claimants according to their respective rights without needless waste or controversy; second, that the rights of all may be evidenced by appropriate certificates and public records, always readily accessible, and may not be dependent upon the testimony of witnesses with its recognized infirmities and uncertainties; and, third, that the amount of surplus or unclaimed water, if any, may be ascertained end rendered available to intending appropriators. ’ S. Rep. No. 755, 82d Congress, 1st Session 5 (1951).”
 
 (State
 
 v.
 
 Rank,
 
 293 F.2d 340, 347.)
 

 In discussing whether the action then pending before the court qualified as one for a general adjudication of the water rights of a stream system, the Circuit Court said:
 

 “In two respects we feel that it has failed to measure up. First, all claimants have not been joined. Second, neither the relief prayed for nor the decree includes the establishment of the rights of the claimants as between themselves. The controversy thus is limited to a private one between the claimants on the one hand and the officers of the Bureau of Reclamation on the other.
 

 “The plaintiffs attempted to meet the problem of joinder by treating the suit as a class action under Rule 23, F. R.
 
 *755
 
 Civ. P. 28 U.S.C.A. In their amended complaint they asserted that they represented not only themselves but all others similarly situated. The district court ruled that the suit was a proper one for application of Rule 23, since ‘the character of the right sought to be enforced is a common right to water from a common source of supply. ’
 
 Rank
 
 v.
 
 United States, supra
 
 at page 155 of 142 F. Supp.
 

 “It may well be that those claiming riparian and overlying rights could properly be treated as a class, since the scope of their rights and the limitations imposed upon them by the physical solution decreed are dependent upon circumstances common to all. This suit, however, involves appropriative and prescriptive rights as well as riparian and overlying rights. In its decree the district court took note of the fact that certain of the plaintiffs individually claimed appropriative or prescriptive rights. In six instances the decree adjudicated the rights of these plaintiffs not as between themselves but as against the defendants. The decree expressly purports to adjudicate the rights of all who claim through appropriation or prescription as a class represented by the parties plaintiff.
 

 “These plaintiffs, as claimants of appropriative or prescriptive rights, cannot, however, speak for others ‘similarly situated.1 The extent of the rights of others must depend upon the circumstances of each individual case. As pointed out in
 
 Miller
 
 v.
 
 Jennings, supra,
 
 appropriative rights cannot be established by a class action. The claimants individually must be before the court.
 

 ( Í
 

 “It may well be that a general adjudication would require no more specific adjudication as to riparian and overlying rights than that which was here entered. As to the appropriative and prescriptive rights, however, the decree only purports to establish the rights of these plaintiffs as against the defendants. No priority is established save only that the rights are prior to those claimed by the defendant officials on behalf of the United States. As between the claimants themselves, their respective priorities are not established.
 

 “For these reasons, the suit at bar falls short of being one for a general adjudication. It is not such a suit as is contemplated by § 666. Consent to suit has not been conferred by the United States under that statute. The district court was without jurisdiction to join the United States
 
 *756
 
 and the United States must be dismissed from this proceeding.”
 
 (State
 
 v.
 
 Rank,
 
 293 F.2d 340, 348.)
 

 In affirming the decision of the Circuit Court of Appeals in
 
 State
 
 v.
 
 Rank, supra,
 
 the Supreme Court of the United States in
 
 Dugan
 
 v.
 
 Rank,
 
 372 U. S. 609 said, at pages 617-619 [10 L.Ed.2d 15, 22, 83 S.Ct. 999, 1005] :
 

 “We go directly to the question of joinder of the United States as a party. We agree with the Court of Appeals on this issue and therefore do not consider the contention at length. It is sufficient to say that the provision of the Me Garran amendment, 66 Stat. 560, 43 USC § 666, relied upon by respondents, and providing that the United States may be joined in suits ‘for the adjudication of rights to the use of water of a river system or other source, ’ is not applicable here. Rather than a case involving a
 
 general
 
 adjudication of ‘all of the rights of various owners on a given stream,’ S. Rep. No. 755, 82d Cong., 1st Sess. 9 (1951), it is a private suit to determine water rights solely between the respondents and the United States and the local Reclamation Bureau officials. In addition to the fact that all of the claimants to water rights along the river are not made parties, no relief is either asked or granted as between claimants, nor are priorities sought to be established as to the appropriative and prescriptive rights asserted. ’ ’
 

 It would be an idle act to question whether the Oregon statute under consideration in
 
 Pacific Live Stock Co.
 
 v.
 
 Lewis,
 
 241 U.S. 440 [60 L.Ed. 1084, 36 S.Ct. 637], did indeed exemplify: “. . . the quasi-public proceeding which in the law of western waters is known as a ‘ general adjudication ’ of a stream system.” It has been declared to be such, in the interpretation given by the courts of the United States to section 666 of title 43, U.S.C.A., by which we are bound.
 

 Thus, while representation of a class of necessary parties to a general adjudication of water rights in a river system by a member or members of such class is not ruled out as satisfying the requirements of section 666 of title 43, there can be no class representation in such a suit of those who claim prescriptive or appropriative rights. In order that all owners and claimants be before the court, those whose rights are based upon prescription or prior appropriation must individually appear before the court; and their rights must be defined as among themselves as well as with regard to upstream appropriators.
 

 
 *757
 
 Logically, a definition of the rights of those owners within the District claiming prescriptive rights against downstream riparian and overlying users would call for a determination of the extent of the diminution of the rights of such riparian and overlying owners as the result of the creation of such prescriptive rights.
 

 It is not without significance that the statute creating OCWD and authorizing it to sue does not contemplate that the District in general shall take part in a controversy involving only water rights of owners wholly within the District.
 

 We cannot say, of course, that there is such controversy. It may well be that those landowners within the District as well as other users and appropriators are at one in recognizing and respecting their various interests.
 

 Moreover, if OCWD is the owner of any rights in the waters of the system, it would be entitled to protect its rights as such owner in any general adjudication action.
 

 To sum up: If the United States is to remain a party, the action must be made one for the general adjudication of water rights in the stream system. That can only be done by making parties to the action all those who under the interpretations by the federal courts of section 666 are incapable of being represented as a class, that is the owners and claimants of rights to take water within the Lower Basin of the Santa Ana River system, who base their rights upon prescription or prior appropriation.
 

 The requirement will not be met by representation of those owners and claimants under the District’s statutory authority to sue, since in this instance the state law must yield to the interpretation given by the courts of the United States to the statute waiving the immunity of the sovereign.
 

 Nor will the requirement be met by the suggestion that proof of the rights of appropriative and prescriptive owners within the District may be proved under the present complaint in action #117628.
 

 Such proof was made to some extent in the former action; but it was there held not error for the trial court to fail to make findings determining the extent of those rights as to which evidence had been presented.
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside, supra,
 
 188 Cal.App.2d 566.)
 
 [8]
 

 
 *758
 
 Nor can OCWD, for the purpose of enabling itself to sue the United States, impose upon the defendants in action #117628 an obligation of bringing in by cross-complaint the absent parties whose presence is necessary to make of that action one for the general adjudication of water rights in the river system.
 

 The facts necessary to show that the action is of the type to which the United States may be joined as a party must appear from the complaint.
 
 (Miller
 
 v.
 
 Jennings, supra,
 
 243 F.2d 157.)
 

 Other Matters Involved
 

 We do not pass upon the action of the lower court in overruling demurrers except insofar as they raised the questions of jurisdiction over the United States and of the claimed incapacity of OCWD to maintain the suit at all. Nor do we consider it necessary to deal with the question whether individual claimants within OCWD could be compelled to answer interrogatories. If such claimants are made parties to the action, there will be no problem. Nor do we pass on the question whether OCWD must give notice of the pendency of the action to claimants to or owners of water rights within the District.
 

 It is represented by petitioners and undenied that the trial of action #117628 will be costly in the extreme; the cost to the date of arguing the demurrers for all parties exceeds $1,000,000. That fact alone would justify issuance of the writ of prohibition if the respondent court does not have jurisdiction over the United States of America.
 
 (Jardine
 
 v.
 
 Superior Court,
 
 213 Cal. 301, 305 [2 P.2d 756, 79 A.L.R.
 
 *759
 
 291];
 
 Weisfeld
 
 v.
 
 Superior Court,
 
 110 Cal.App.2d 148 [242 P.2d 29].)
 

 The reasons that influenced the Circuit Court of Appeals to deny (in
 
 California
 
 v.
 
 United States Dist. Court,
 
 213 F.2d 818) a petition for the writ of prohibition in the pretrial stages of the litigation that reached the Supreme Court of the United States under the title of
 
 Dugan
 
 v.
 
 Rank, supra,
 
 372 U.S. 609 [10 L.Ed.2d 15, 83 S.Ct. 999], do not apply to the present proceedings in which the rules of California law concerning .the propriety of issuing of the writ will govern.
 

 It is stated that there may be as many as 3,000 claimants to the ownership of water within the boundaries of OCWD. The majority of those may well be owners of overlying or riparian lands whose water rights are based solely on ownership of such lands. Nothing that we have said precludes their being represented as a class or classes.
 

 If the United States of America is to remain
 
 in invitum
 
 a party defendant, all claimants to or owners of rights to water within the Santa Ana River system whose rights or claims are based upon prescription or prior appropriation, and who are not now joined as parties to the action in the court below, must be brought before that court as plaintiffs or defendants ; that is so whether such claimants or owners are within OCWD or elsewhere. Likewise, if there are any claimants to or owners of water rights based upon riparian or overlying ownership of lands outside OCWD who are not parties to the action in the court below, or, being members of a class or classes of such riparian or overlying owners, are not the subjects of class representation in said action, all such claimants or owners must be joined as parties. We do not decide whether there are any such claimants to prescriptive, appropriative, riparian or overlying rights outside OCWD.
 

 An alternative writ of prohibition shall issue restraining the respondent Superior Court of Orange County from further proceeding against the United States of America in action #117628 now pending in that court until 90 days after this order becomes final, except to order a dismissal of said action, unless the plaintiff in that action, within said 90 days after this order shall become final, shall have filed an amended complaint in said action, in conformity with the views expressed herein. Said writ shall be discharged upon the filing of such an amended complaint within such 90-day period; otherwise, the writ shall become absolute at
 
 *760
 
 the expiration of said period and a peremptory writ shall then issue.
 

 This court retains jurisdiction to make, within said 90-day period, an order or orders extending the time within which an amended complaint may be filed in the event OCWD should elect to file such amended complaint bringing in the parties that under our ruling are necessary in order to hold the United States of America as a defendant, and should, having exercised due diligence, be unable to file such amended complaint before the expiration of such 90-day period; and thereafter, in the event such amended complaint is filed, to make such other orders as within its discretion it deems necessary to pass upon the question whether the United States of America has properly been made a defendant within the permission granted by section 666 of title 43 U.S.C.A., as interpreted by the courts of the United States.
 

 The scope of the issues to be decided and the nature of the relief, if any, that may be granted, whether the complaint in the court below be amended or not, are in the first instance for the trial court to decide; therefore, we deny the petition for writ of mandate, and make no determination on the merits except as to the trial court's lack of jurisdiction over the United States of America on the original complaint.
 

 The earlier order of this court restraining all proceedings in the court below, except as to then pending discovery proceedings, is necessarily set aside.
 

 The United States of America shall recover its costs herein from the real party in interest. The other parties shall bear their own costs.
 

 Brown (Gerald), P. J., and Coughlin, J., concurred.
 

 Petitions for rehearing were denied on November 28, 1967, and the opinion and judgment were modified to read as printed above. The applications of the petitioners and the real party in interest for a hearing by the Supreme Court, were denied January 3, 1968.
 

 [1]
 

 ‘‘
 
 Respondent district has chosen to exclude these nonmunicipal agencies, though they are presumably large appropriators of water from the San Bernardino and other upstream basins from the number of parties defendant. ... all restrictions implied in the findings or contained in the judgment against the acquisition or receipt by appellant cities of water from the river system additional to what their own prescriptive rights entitle them to, from nonmunicipal agencies, must be stricken out."
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 173 Cal.App.2d 137, 218-219 [343 P.2d 450].)
 

 [2]
 

 ‘‘
 
 [B] espondent’s counsel have here declined to commit themselves, even as to the aggregate quantum of the water rights that they are seeking to establish, except in the instance of the overlying property owners only."
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 188 Cal.App.2d 566, 585-586 [10 Cal.Rptr. 899].)
 

 [3]
 

 ‘‘To whom does the benefit of the judgment here to be awarded as a matter of law enure? The answer would seem to be, to those whose rights now found to be infringed, have been at least in some sort, prima facie or otherwise measured and defined. They should not enure to those whose rights have, not from necessity of the case but
 
 ex industria,
 
 been left without any quantitative determination or definition, even though they continue to be represented by respondent in the action. They are merely in the same position as parties who have seen fit not to complete their case."
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 188 Cal.App.2d 566, 586 [10 Cal.Rptr. 899].)
 

 [4]
 

 "On the former appeal it was decided that a cause of action had been stated, without the necessity of specifying the individual water rights in behalf of which the District was suing. From that view we are not departing.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 188 Cal.App.2d 566, 585 [10 Cal.Rptr. 899].)
 

 [5]
 

 Section 40-2(7), Water Code Appendix [Deering’s Wat. Code, Act 5243, § 2], declares that OCWD [“shall have power”]: “To carry out the purposes of this act, to commence, maintain, intervene in, defend and compromise, in the name of said district, or otherwise, and to assume the costs and expenses of any and all actions and proceedings now or hereafter begun to prevent interference with water or water rights used or useful to lands within said district, or diminution of the quantity or pollution or contamination of the water supply of said district, or to prevent unlawful exportation of water from said district, or to prevent any interference with the water or water rights used or useful in said district which may endanger or damage the inhabitants, lands or use of water in said district; provided, however, that said district shall not have power to intervene or take part in, or to pay costs or expenses of actions or controversies between the owners of lands or water rights all of which are entirely within the boundaries of said district and which do not involve pollution or contamination of water within said district or exporting water-outside of said district’s boundaries or any threat thereof.”
 

 [6]
 

 ”We do not see why the owners of such overlying rights may not properly be treated as a class possessing such common interests as to justify the maintenance of a single action for their protection. Whether or not the overlying landowners using water for other purposes than agriculture or the holders of appropriative rights within the district are properly to be included within the same class is another question but not a question that goes to the right of the district to maintain the action at all.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 173 Cal.App.2d 137, 168 [343 P.2d 450].)
 

 [7]
 

 "As respects the question of parties, it follows from what has already been said that, though overlying land owners and others claiming water-rights within the district might properly have been made parties plaintiff, it cannot be held that the district was required to join them as parties, nor that their absence amounts as a matter of law to a defect of parties plaintiff. Neither do we think that, for the purpose of seeking a determination of the extent of the prescriptive rights of appellant cities themselves to produce appropriated water from the Santa Ana River System (as distinguished from their acquisition of -water from non-municipal agencies themselves having prescriptive rights to the same) the district was required to join, as parties defendant, other appropriates of water from the river system upstream from the District Basin.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 173 Cal.App.2d 137, 172-173 [343 P.2d 450].)
 

 [8]
 

 “We have, then, to inquire whether appellants have suffered any actual prejudice from the trial court’s failure to proceed as far as the
 
 *758
 
 evidence warranted in determining the extent of all prescriptive rights to water in the whole river system, including those of appropriates in the District and thereby, so far as the evidence permitted, marshalling the whole array of prescriptive rights by which the overlying rights of the landowners are restricted. As to that, we must conclude that, even with any findings that the evidence would have permitted the court to make on the subject, the uncertainty as to the nature and, if quantitative, the proportionate part, of the initial water rights of the overlying landowners that have been subtracted by the creation of said adverse prescriptive rights, would not have been removed, nor would the burden of appellants to remove the uncertainty, if, indeed, it were susceptible of removal at all, have been met. It is, therefore, our view that such additional findings, had they been made, would not have been of material assistance to appellants’ defense and, therefore, that the failure to make them, however regrettable, did not amount to reversible error.”
 
 (Orange County Water Dist.
 
 v.
 
 City of Riverside,
 
 188 Cal.App.2d 566, 574 [10 Cal.Rptr. 899].)